IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| COREY J. CHANEY and | § | PLAINTIFFS |
| MIRANDA L. CHANEY | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 1:18cv30-HSO-JCG |
| | § | |
| | § | |
| CITY OF OCEAN SPRINGS, | § | |
| MISSISSIPPI | § | DEFENDANT |

MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART DEFENDANT CITY
OF OCEAN SPRINGS, MISSISSIPPI'S [13] MOTION TO DISMISS
ALL CLAIMS BROUGHT UNDER § 1983

BEFORE THE COURT is the Motion [13] to Dismiss All Claims Brought

Under § 1983 filed by Defendant City of Ocean Springs, Mississippi. After due

consideration of the Motion, the related pleadings, the record, and relevant legal

authority, the Court finds that the City's Motion [13] to Dismiss should be granted

in part and denied in part and that Plaintiffs' equal protection claim should be

dismissed with prejudice.

## I. BACKGROUND

### A. Factual background

This action arises out of Plaintiffs Corey J. Chaney and Miranda L. Chaney's

("Plaintiffs") purchase and attempted development of certain real property located

within the city limits of Defendant City of Ocean Springs, Mississippi (the "City").

*See* 1st Am. Compl. [8] at 2. On August 15, 2016, Plaintiffs purchased a single

parcel of property comprised of what had been known as Lot 16 and the south half

of Lot 17[1] in the City's Cherokee Cove Subdivision. *Id.* at 2. Plaintiffs apparently intended to renovate an existing structure on Lot 17, subdivide the parcel, and then sell the two resulting parcels, Lot 16 and the south half of Lot 17, separately. *Id.* at 2-3. According to Plaintiffs, before their lender, First Federal, would give final approval to the construction financing, it requested and received confirmation from the City that the south half of Lot 17 qualified as a "legal lot." *Id.* at 3. The City allegedly confirmed that both reconfigured lots would be buildable lots that could be sold and developed separately, as long as Lot 17 received an additional 7.3 feet from Lot 16. Based on this confirmation, First Federal approved construction financing for Plaintiffs' project on Lot 17. *Id.*

The City issued a building permit on March 13, 2017, and construction to renovate the existing structure on Lot 17 began on May 13, 2017. *Id.* at 5. According to Plaintiff, beginning on June 1, 2017, neighboring landowners engaged in a pattern of harassment directed at Plaintiffs, including vandalizing their property. *Id.* On June 27, 2017, "unidentified neighbors," whom Plaintiffs believe "were motivated by racism and their desire to keep a mixed race couple from moving into the neighborhood," had an attorney draft a letter and send it to the

---

[1] Lot 17 was split in 1983. *See* 1st Am. Compl. [8] at 3. A City ordinance was subsequently adopted in 1985 that apparently prevents adjoining, nonconforming lots from being individually sold or used for a single family dwelling, unless the lots were owned separately in 1985. *See id.* at 2, 8-9; July 27, 2017, Letter [8-7] at 1 (letter from City citing its zoning ordinance Section 401.4.6(1)). Plaintiffs contend that their Lots 16 and 17 are exempt from this 1985 ordinance. *See* 1st Am. Compl. [8] at 2. In a July 27, 2017, letter to Mr. Chaney, the City opined that Lot 16 and the portion of Lot 17 acquired by Plaintiffs could not be developed independently under Section 401.4.6 of the City's zoning ordinances. *See* July 27, 2017, Letter [8-7] at 1.

City. *Id.* The letter referenced the City's approval of what these residents referred to as an "illegal lot split/reconfiguration" and an "illegal/void building permit concerning the subject property." *Id.* at 5-6. The residents asked the City to "pull/revoke the illegal building permit, and overturn or withdraw the purported lot split . . . ." *Id.*

Plaintiffs allege that the day the City received the letter, a building official called Plaintiffs' architect asking to speak with them. *Id.* at 6. That same day, the City's Planning and Grants Administrator, Carolyn Martin ("Martin"), left a voicemail for Plaintiffs stating that "she had made an error in her interpretation of the code" and that "she had failed to consider and/or was unaware of the statutes which applied to [Plaintiffs'] property." *Id.* Plaintiffs assert that, without providing notice or an opportunity to be heard, the City then issued a Stop Work Order on July 5, 2017, and delivered to the Jackson County, Mississsppi, Chancery Clerk a document entitled "Rescind: Parcel Boundary Reconfiguration." *Id.* at 7. On July 11, 2017, this document was recorded in the office of the Chancery Clerk of Jackson County, ostensibly restoring the parcels to their original configuration. *Id.* at 8.

When Plaintiffs contacted First Federal on July 7, 2017, to inform it of these developments, First Federal had already learned of them and had frozen Plaintiffs' account. *Id.* Plaintiffs infer that this indicates someone contacted their lender for the purpose of intentionally interfering with their building project. *Id.*

On July 27, 2017, the City sent Plaintiffs a letter setting forth its position that construction could continue on what had been known as Lot 17, but only

subject to relevant codes and ordinances. *Id.* This included certain set-back provisions, but the City recognized that the home being built might already be violating this provision. *Id.* The City's letter also stated that any plans to sell a portion of the parcel that had previously been known as Lot 16 would violate the relevant zoning ordinance, and that such a sale would not be possible. *Id.*

Plaintiffs claim that a City building official then contacted their architect and informed him that the official would discuss the matter at a "board meeting" that evening; however, Plaintiffs were never informed this communication occurred. *Id.* at 9. Plaintiffs posit that the City and its Planning and Grants Administrator Martin contacted the architect in an attempt to reconfigure the project, and intentionally conducted meetings outside Plaintiffs' presence in an effort to do so. *Id.*

First Federal discontinued funding the Lot 17 renovation project, which caused all construction to halt. *Id.* "As a result of the intentional actions of Ocean Springs and its policy maker Martin and to the detriment of [Plaintiffs], the collateral of Charter, Lot 16, was rendered worthless." *Id.* Plaintiffs claim that they have now been sued by their contractor for over $70,000.00. *Id.*

B.   Procedural history

Plaintiffs filed a Complaint [1] against the City in this Court on January 30, 2018, followed by a First Amended Complaint [8] on March 16, 2018. The First Amended Complaint advances federal constitutional claims pursuant to 42 U.S.C. § 1983 for alleged violations of Plaintiffs' equal protection, procedural due process,

and substantive due process rights, and a claim for a wrongful taking of property without just compensation. The First Amended Complaint also raises claims under state law for tortious interference with contractual relations, negligent misrepresentation, and negligence. 1st Am. Compl. [8] at 9-13. Plaintiffs seek an award of compensatory damages, attorneys' fees, expenses, and prejudgment interest. *Id.* at 14.

The City has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims Plaintiffs are asserting against it under 42 U.S.C. § 1983. City's Mot. [13] at 1. The City posits that Plaintiffs' § 1983 claims should be dismissed because they "have made no allegations of a policy or custom of the City's that was a motivating factor behind any alleged constitutional violations," and because their "takings claim is not ripe, as Plaintiffs have failed to pursue the matter under available state remedies." City's Mem. [14] at 1-2. The City argues that Plaintiffs' procedural due process claim fails because they "made no effort to avail themselves of local and state procedures readily available." *Id.* For this reason, "the substantive due process claims should be dismissed as premature in that the procedural due process claim based on alleged deprivation of the same right is not properly before the Court." *Id.* Upon dismissal of the § 1983 claims, the City maintains that this case should be dismissed in its entirety for lack of federal subject-matter jurisdiction. *Id.* at 2.

Plaintiffs respond that they "have pled enough facts to state a claim that is plausible on its face," Pls.' Resp. [17] at 1, including the existence of an official

policy with a direct causal connection to a constitutional deprivation, *id.* at 3. "The facts as pled by Plaintiffs, and which must be taken as true, establish that a decision adverse to Plaintiffs' constitutional rights was made and officially adopted and promulgated by an official of Defendant (Carolyn Martin) to whom Defendant delegated policy-making authority . . . ." *Id.* at 5. Plaintiffs, who are represented by counsel, have not sought leave to amend their pleadings in the event the Court finds that the First Amended Complaint fails to state a § 1983 claim.

## II. DISCUSSION

### A. Rule 12(b)(6) standard

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

A "plaintiff's factual allegations must support a claim to relief that is plausible on its face and rises above mere speculation." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010). "[A] complaint may proceed even if 'recovery is very remote and unlikely,' so long as the alleged facts 'raise a right to relief above the speculative level.'" *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (quoting *Twombly*, 550 U.S. at 555–56).

In determining whether a complaint states a valid claim for relief, a court must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010). While a court must "take factual allegations as true at the Federal Rule of Civil Procedure 12(b)(6) stage, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

B.    Municipal liability under § 1983

42 U.S.C. § 1983 requires a showing that a defendant deprived the plaintiff of his or her constitutional rights and did so while acting under color of state law. *Moody v. Farrell*, 868 F.3d 348, 351 (5th Cir. 2017). "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Plaintiffs seeking to impose liability on local governments under § 1983 must show that "'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 691). To state a claim for municipal liability under § 1983, a plaintiff "must allege sufficient factual content to permit the reasonable inference (1) that a constitutional violation occurred and (2) that an 'official policy' attributable to the [municipality's] policymakers (3) 'was the moving force' behind it." *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866 (5th Cir. 2012).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. "In rare circumstances, a single unconstitutional action may be sufficient to impose municipal liability if undertaken by the municipal official or entity possessing final policymaking authority for the action in question." *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (quotation omitted); *see also Advanced Tech. Bldg. Sols., L.L.C. v. City of Jackson, Miss.*, 817 F.3d 163, 165 (5th Cir. 2016).

C.    The City's arguments

    1.    Absence of an official policy or custom

The City argues that it cannot be held liable under § 1983 because Plaintiffs have not sufficiently pleaded the existence of an official policy or custom that was the moving force behind any constitutional violation. *See* City's Mem. [14] at 4; City's Reply [18] at 1-3. Plaintiffs insist that they have done so and rely upon the actions of Carolyn Martin, whom they posit qualified as a policymaker for the City. *See* Pls.' Resp. [17] at 4-5. The First Amended Complaint specifically alleges that Martin was a policymaker for the City and that her actions violated Plaintiffs' constitutional rights. *See, e.g.,* 1st Am. Compl. [8] at 7, 9. The City has not argued that Martin was not a policymaker, and it did not specifically address this question in its Reply [18].

-8-

The City further argues that the *Parratt/Hudson*[2] doctrine applies

and that "Plaintiffs have not alleged that the revocation of their building permit

was caused by anything other than the acts of individual employees." City's Mem.

[14] at 9. For this reason, it cannot be held accountable for an unauthorized,

intentional deprivation of property by an employee, particularly where a

meaningful post-deprivation remedy for the loss was available. *Id.* (citing *Hudson v.

Palmer*, 468 U.S. 517, 533 (1984)). "Under the *Parratt/Hudson* doctrine, 'a

deprivation of a constitutionally protected property interest caused by a state

employee's random, unauthorized conduct does not give rise to a § 1983 procedural

due process claim, unless the State fails to provide an adequate postdeprivation

remedy.'" *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (quoting *Zinermon v.

Burch*, 494 U.S. 113, 115 (1990)). However, the Fifth Circuit has held that conduct

is not "random and unauthorized" if a state has delegated to its employees or

officials the power and authority to effect the very deprivation complained of. *Id.*

(quoting *Zinermon*, 494 U.S. at 138).

The First Amended Complaint asserts that Martin qualified as a policymaker

for the City, and the City has not yet adequately rebutted this allegation. When an

ultimate policymaker in a specific area takes action in that area, her conduct may

generally be construed to constitute a custom or policy of the municipality. *See

Woodward v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005). The *Parratt/Hudson*

---

[2] *Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).

doctrine does not apply in such situations.  *See id.*  Based upon the present record, the City has not shown that dismissal on this basis is warranted.

      3.    <u>Failure to show the violation of a constitutional right</u>

The City also seeks dismissal of the § 1983 claims on their merits, arguing that Plaintiffs cannot show the violation of a constitutional right.

      a.    <u>Equal protection claim</u>

The City takes the position that Plaintiffs have failed to state an equal protection claim, because they have advanced only conclusory allegations or legal conclusions to support it.  *See* City's Mem. [14] at 5-7.  The First Amended Complaint alleges that the City "attempted to enforce its zoning decision selectively in violation of the Equal Protection Clause for improper reasons, including but not limited to racially discriminatory reasons and the desire to prevent the Chaneys from the exercise their constitutionally protected property rights."  1st Am. Compl. [8] at 10.

The Fourteenth Amendment to the United States Constitution provides in relevant part that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  This provision "prohibits selective enforcement of the law based on considerations such as race."  *Whren v. United States*, 517 U.S. 806, 813 (1996).  To establish a violation of the Equal Protection Clause, a plaintiff "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated."  *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (quotation omitted).  The Equal Protection Clause is

violated only by intentional discrimination and occurs when "the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group . . . ." *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) (quotation omitted) (emphasis in original). "The essence of an equal protection claim is that other persons similarly situated as is the claimant unfairly enjoy benefits that he does not or escape burdens to which he is subjected." *United States v. Cronn*, 717 F.2d 164, 169 (5th Cir. 1983).

The First Amended Complaint alleges that Plaintiffs' neighbors were motivated by discriminatory animus to complain to the City about the issuance of the building permit, but there is no explicit factual allegation that the City itself was aware of the intent behind the neighbors' complaints, or that these neighbors actually communicated their discriminatory intent to anyone with the City when they voiced their objections to the project. Plaintiffs have attached to the First Amended Complaint [8] a letter [8-4] from an attorney written "on behalf of property owners" in the subdivision in which Plaintiffs' property is located. *See* Letter [8-4] at 1-5. The letter references legal authority, argues that the approval of the lot split or reconfiguration and the issuance of the building permit were illegal or void, and asks the City to immediately suspend and ultimately revoke "the illegal permit." *See id.* A plain reading of this letter reveals no hint that any discriminatory intent behind the property owners' actions was communicated to the City. *See id.*

The First Amended Complaint contains insufficient factual detail from which one could plausibly conclude that any decisionmaker for the City was motivated, at least in part, by discriminatory animus for the purpose of causing an adverse effect on an identifiable group. While the First Amended Complaint contains a conclusory assertion that the City selectively enforced its zoning ordinances in a discriminatory fashion, *see* 1st Am. Compl. [8] at 10, Plaintiffs have not alleged any specific facts from which one could plausibly conclude that whatever discriminatory intent may have motivated Plaintiffs' neighbors was ever conveyed to the City. Nor does the First Amended Complaint identify a comparator against whom the same or similar zoning ordinance was not enforced. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are insufficient to survive a Rule 12(b)(6) motion. *See Rountree*, 892 F.3d at 685. The First Amended Complaint fails to state a claim for a violation of the Equal Protection Clause, and the City's Motion to Dismiss will be granted as to this claim.

      b.    <u>Plaintiffs' substantive due process claim</u>

The First Amended Complaint alleges that Plaintiffs

> had a property interest in the building permit issued to them by Ocean Springs and after relying upon the permit and expending hundreds of thousands of dollars it was wrongfully taken from them. The actions of Ocean Springs were oppressive and amount to an abuse of power which shocks the conscience.

1st Am. Compl. [8] at 11. The City takes the position that Plaintiffs' substantive due process claim should be dismissed because they have not shown a legitimate entitlement to a protected property interest. City's Mem. [14] at 12. The City

further maintains that this claim is premature and should be dismissed. *Id.* at 13. Plaintiffs respond that they "are asserting a property interest in the building permit." Pls.' Mem. [17] at 10.

The substantive due process component of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To prevail on a substantive due process claim, [a plaintiff] must first establish that it held a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies." *Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240, 249-50 (5th Cir. 2000). The nature of a property interest is determined according to state law. *Id.* at 250. If a court is persuaded that the government's action implicates a constitutionally protected property right, it must next determine the appropriate standard of review. *Reyes v. N. Texas Tollway Auth.*, 861 F.3d 558, 561 (5th Cir. 2017) (discussing rational basis review and "shocks the conscience" test).

(i)    The nature of Plaintiffs' asserted property interest

"Property interests are not created by the Constitution; rather, they stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings." *Blackburn v. City of Marshall*, 42 F.3d 925, 936-37 (5th Cir. 1995). In order to come within the purview of the Fourteenth Amendment, a person must have "more than an abstract need or desire for" the property interest and "more than a unilateral expectation of it." *Id.* at 936. Instead, a plaintiff must "have a legitimate claim of entitlement" to the

property interest.  *Id.*  Protected property interests are those "that rise to the level of a legitimate claim of entitlement" and not "mere expectations."  *Walsh v. La. High Sch. Athletic Ass'n*, 616 F.2d 152, 159 (5th Cir. 1980) (quotation omitted).

Plaintiffs allege that they enjoyed a protected property interest in the building permit that the City had issued to them, which allowed them to begin construction, and that the City later revoked this permit.  *See* 1st Am. Compl. [8] at 11.  In support of its request for dismissal, the City cites only general legal authority addressing protected property rights under the Fourteenth Amendment.  No reference is made to any Mississippi statutes, case authority, or local ordinances pertaining to the specific question of whether the revocation of a previously-issued building permit implicates a protected property interest under state law.  *See* City's Mem. [14] at 12-13.[3]  The revocation of a building permit arguably presents a different question than the initial denial of one, and the City has not addressed this issue.  Under the Rule 12(b)(6) standard applicable at this stage of the case, the City has not shown that Plaintiffs have failed to sufficiently plead a substantive due process claim with respect to the revocation of their building permit.

(ii)     Whether the substantive due process claim is premature

The City contends that Plaintiffs' substantive due process claim is premature because their procedural due process claim cannot be maintained.  *See* City's Mem.

---

[3]  *See also Bush v. City of Gulfport, Miss.*, 454 F. App'x 270, 276 (5th Cir. 2011) (assuming without deciding at summary judgment stage that applicant had property interest in building permit); *Vineyard Investments, L.L.C. v. The City of Madison, Miss.*, 440 F. App'x 310, 314 (5th Cir. 2011) (same).

[14] at 13-14. Because the Court will deny the City's Motion to Dismiss the procedural due process claim, and because the City has advanced no other grounds for dismissal of the substantive due process claim, its Motion to Dismiss will be denied as to this claim.

      c.     <u>Takings and procedural due process claims</u>

The essence of Plaintiffs' takings claim is their allegation that their Fifth Amendment rights "were violated when Ocean Springs revoked the previously issued building permit and boundary reconfiguration and deprived them of the use of their property without compensation." 1st Am. Compl. [8] at 11. Plaintiffs claim that the City violated their procedural due process rights by "intentionally revoking the building permit from the Chaneys . . . without providing notice and an opportunity to be heard," and that there were "no pre or post deprivation remedies . . . available to them." *Id.* at 10.

The City argues that Plaintiffs' takings claim is not ripe and should be dismissed because Plaintiffs: (1) have failed to establish that the City had reached its final decision on this matter; and (2) failed to obtain relief and compensation under ordinances of the City or the laws of the State of Mississippi. *See* City's Mem. [14] at 7-8; City's Reply [18] at 5-6. As to the procedural due process claim, the City argues that adequate process was available to remedy any deprivation under the laws of the City and the State, but that Plaintiffs failed to avail themselves of those remedies. *See* City's Mem. [14] at 8. According to the City, "Plaintiffs have asserted no facts demonstrating the inadequacy of the City and/or

State remedies available, but simply refused to utilize them." *Id.* at 10. For this reason, Plaintiffs' procedural due process claim should be dismissed for failure to exhaust available administrative remedies. The City further maintains that "Plaintiffs' procedural due process cause of action should also be dismissed because it is ancillary to the wrongful taking claim, which should be dismissed . . . ." *Id.* at 11.

Plaintiffs counter that neither Mississippi's inverse condemnation procedure nor any local ordinances are capable of providing "just compensation" for this alleged taking, leaving this lawsuit as their only available remedy. Pls.' Resp. [17] at 7. As for procedural due process, Plaintiffs maintain that they have adequately pled such a claim and argue that their claim is not ancillary to their takings claim. *Id.* at 8-10.

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation," U.S. Const. amend. V, and is made applicable to the states through the Fourteenth Amendment, *see Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 292 (5th Cir. 2006). To prevail on a takings claim, a plaintiff must demonstrate that he or she has a protectable property right and that the right has actually been taken. *United States v. 0.073 Acres of Land, More or Less, Situated in Pars. of Orleans & Jefferson, Louisiana*, 705 F.3d 540, 545 (5th Cir. 2013); *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269 (5th Cir. 2012).

The Due Process Clause of the Fourteenth Amendment encompasses a

guarantee of fair procedure. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The deprivation by state action of a constitutionally protected interest is not itself a violation of procedural due process. *Id.* Instead, it is the deprivation of such an interest without due process of law that is unconstitutional. *Id.* With respect to the procedural protections required by the Constitution, the United States Supreme Court has held that it "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Id.* at 127 (emphasis in original). "In some circumstances, however, the Court has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Id.* at 128.

> Procedural due process claims are subject to a two-step inquiry: The first question asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.

*ODonnell v. Harris Cty.*, 892 F.3d 147, 157 (5th Cir. 2018) (quotation omitted).

(i)     Whether Plaintiffs' procedural due process claim is ripe

The City argues that Plaintiffs' procedural due process claim is not ripe because it is ancillary to their takings claim. *See* City's Mem. [14] at 11. The Fifth Circuit has "distinguished procedural due process claims that involve allegations of deprivations 'ancillary' to or 'arising from' a takings claim from those whose main thrust is not a claim for a taking." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 223-24 (5th Cir. 2012) (quotation omitted). In the former case, ripeness depends upon the ripeness of the takings claim; the ripeness of the latter is a separate

question from the ripeness of any takings claim. *Id.* at 224. This is because where a procedural due process claim is cognizable separate and apart from a takings claim, a plaintiff's potential damages for the due process violation and for the takings claim are not coextensive. *Id.* at 225. "There are many intangible rights that merit the protection of procedural due process although their infringement falls short of an exercise of the power of eminent domain for which just compensation is required under the Fifth and Fourteenth Amendments." *Id.* at 226 (quotation omitted).

The Fifth Circuit has held that "where the injury that resulted from an alleged procedural due process violation is merely a taking without just compensation, [a court] cannot know whether the plaintiff suffered any injury until the takings claim has been adjudicated." *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 91 (5th Cir. 2011) (citing *John Corp. v. City of Houston*, 214 F.3d 573, 585-86 (5th Cir. 2000)). Thus, where a procedural due process claim is coextensive with the takings claim, a court should permit state takings procedures to "run their course" before adjudicating the procedural due process claim. *Id.*

Conversely, where a plaintiff's procedural due process claim asserts facts which implicate injuries broader than those occasioned by a taking without just compensation, such as "economic injuries" and "inadequate pre-deprivation due process," which is itself actionable, and where a state law proceeding would not afford a remedy for these additional injuries, the procedural due process claim does

not completely overlap with the takings claim. *Archbold-Garrett v. New Orleans City*, 893 F.3d 318, 324 (5th Cir. 2018). Under these circumstances, the procedural due process claim is ripe for adjudication regardless of the ripeness of the takings claim. *Id.*

Here, the First Amended Complaint alleges that Plaintiffs were denied pre-deprivation due process because the City intentionally revoked their building permit without providing Plaintiffs notice and an opportunity to be heard, and without affording them any pre- or post-deprivation remedies. First Am. Compl. [8] at 10. Plaintiffs assert that they "were damaged and make claim for all damages allowable under federal law," *id.* at 10, and seek compensatory damages for the alleged injuries caused by this deprivation, *id.* at 14.

"[T]he injury that stems from a denial of due process is not the liberty or property that was taken from [Plaintiffs], but the fact that it was taken without sufficient process." *Bowlby*, 681 F.3d at 222. Plaintiffs allege that they suffered damages which appear to be beyond those available for a takings claim. Specifically, in addition to damages caused by the taking itself, Plaintiffs assert that they were damaged because they were deprived of an opportunity to appear at the City's hearing and argue in support of their building permit. Plaintiffs also allege other damages which go beyond the diminution in value or loss of use of their property. *See* First Am. Compl. [8] at 10. In short, Plaintiffs' procedural due process claim does not mirror their takings claim, *compare id.*, *with id.* at 11, and the City has not sufficiently shown that the available state law proceedings would

afford a remedy for these additional injuries, *see Archbold-Garrett*, 893 F.3d at 324. Thus, at least on the present record, the procedural due process claim appears to be ripe for adjudication. The City's Motion to Dismiss should be denied as to Plaintiffs' procedural due process claim.

(ii)    Whether Plaintiffs' takings claim is ripe

"[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). Thus,

> [a] takings claim becomes ripe only when (1) the relevant governmental unit has reached a final decision as to how the regulation will be applied and (2) the plaintiff has sought compensation for the alleged taking through whatever adequate procedures the state provides.

*Gibson v. Texas Dep't of Ins.--Div. of Workers' Comp.*, 700 F.3d 227, 240 (5th Cir. 2012). The first prong of this analysis derives from courts' reluctance to hear premature takings claims. *Urban Developers LLC*, 468 F.3d at 293.

Where a procedural due process claim is ripe, a court must consider whether fairness and judicial economy justify a federal court's hearing a related, but unripe, takings claim. *See Archbold-Garrett*, 893 F.3d at 324. The Fifth Circuit has recently recognized that, under *Williamson County*, the ripeness inquiry for a takings claim operates as a prudential doctrine, rather than as a strict jurisdictional bar. *Id.* "Sending [plaintiffs'] takings claim back to state court while their due process claim remains in federal court would needlessly generate

additional legal expenses for the parties and would result in piecemeal litigation, which does not serve judicial economy." *Id.* at 325. According to the Fifth Circuit, a district court errs by dismissing a plaintiff's takings claim under such circumstances. *Id.*

Because the Court will deny the City's request to dismiss Plaintiffs' procedural due process claim, *Archbold-Garrett* directs this Court to retain the takings claim, at least until such time as the procedural due process claim is resolved.

### III. CONCLUSION

Defendant City of Ocean Springs, Mississippi's, Motion [13] to Dismiss will be granted in part and denied in part. Plaintiffs' equal protection claim will be dismissed with prejudice, and Plaintiffs' remaining claims will proceed.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [13] to Dismiss All Claims Brought Under § 1983 filed by Defendant City of Ocean Springs, Mississippi, is **GRANTED IN PART**, as to Plaintiffs' equal protection claim, **and DENIED IN PART**, in all other respects.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiffs' equal protection claim is **DISMISSED WITH PREJUDICE**. Plaintiffs' remaining claims will proceed.

**SO ORDERED AND ADJUDGED**, this the 12th day of March, 2019.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE